IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHERYL EDWARDS, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HMS HOST USA, INC., and | ) | |
| HMSHOST USA, LLC, | ) | **JURY TRIAL REQUESTED** |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, Cheryl Edwards, by and through undersigned counsel, and hereby brings this action against Defendant HMS Host USA, Inc. and Defendant HMSHost USA, LLC.

## INTRODUCTION

1.

This is an action under the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* ("FLSA") alleging that Defendants: (1) failed to pay Plaintiff the correct amount of overtime wages during her employment; (2) failed to pay Plaintiff the correct amount of straight time wages for certain hours worked; and (3) failed to pay Plaintiff the minimum wage for certain hours worked.

1

## PARTIES

2.

Plaintiff is a citizen of the state of Georgia and resides in Cobb County.

3.

Defendants HMS Host USA Inc., a Delaware corporation, and HMSHost USA, LLC, a Delaware limited liability company, maintain their principle offices at the same location: 6905 Rockledge Drive, Bethesda, Maryland 20817. Defendants may be served with process by delivering a copy of the Complaint and Summons to their Registered Agent, Corporation Services Company, at 40 Technology Parkway South, Norcross, Georgia 30092.

## JURISDICTION AND VENUE

4.

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

5.

Defendants are subject to personal jurisdiction in the state of Georgia for purposes of this lawsuit because they transact business in state of Georgia.

6.

Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B)(1)(a), venue is proper in this Court because: (1) Defendants reside within the state of Georgia and (2) a substantial part of the events or omissions giving rise to this action occurred within the Northern District of Georgia.

7.

Defendants operate as a unified enterprise, which is engaged in interstate commerce.

8.

At all relevant times, Defendants employed Plaintiff, who was engaged in interstate commerce.

9.

At all relevant times, on information and belief, Defendants have at least $500,000.00 in "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A).[1]

10.

At all relevant times, Plaintiff received wages for services rendered in the three years prior to this lawsuit at a rate of approximately $11.00 per hour.

---

[1] Defendants advertise, "revenues of more than $2.5 billion…" on their website, www.hmshost.com/about-us/.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIMS

11.

Defendants provide hospitality services, which include operating restaurants at the Hartsfield-Jackson Atlanta International Airport ("Airport").

12.

Plaintiff was hired by Defendants in May of 2011, began working on June 29, 2011, and was terminated from her employment on October 16, 2011.

13.

She was hired as a Shift Supervisor, which required, among other duties, that she open restaurants operated by Defendants at the Airport.

14.

Plaintiff was a "nonexempt" employee for the purposes of the FLSA.

15.

Defendants classified Plaintiff's position as nonexempt in a written job description provided to Plaintiff at the beginning of her employment (attached hereto as "Exhibit A").

16.

Plaintiff's regularly scheduled shift began at 4:00 a.m. and ended at 2:00p.m. on each of four (4) days worked per week ("4:00 a.m. shift").

17.

On information and belief, at all relevant times, Defendants generally offered to pay for their employees' parking costs at the Airport. However, in Plaintiff's case, Defendants only offered to pay for one half of any transit fares paid if Plaintiff used transportation provided by the Metropolitan Atlanta Rapid Transit Authority ("MARTA"). Despite her repeated requests to be treated like all other employees, Plaintiff was effectively forced to use MARTA.

18.

On information and belief, MARTA service at the Airport is not in operation during certain hours, including the time period from approximately 2:30 a.m. to 4:00 a.m.

19.

Because of the relationship between MARTA's hours of operation and Plaintiff's scheduled hours, Plaintiff was effectively required to arrive at the Airport at least one hour prior to her shift.

20.

By way of example, if the last MARTA train of the day arrived at the Airport at 2:30 a.m., Plaintiff would have to take that train, and as a result, arrive

one and one half hours prior to her 4:00 a.m. shift. Otherwise, Plaintiff would not be able to arrive at the Airport until after the beginning of her 4:00 a.m. shift.

21.

On information and belief, the shuttles ("Plane Trains") that run between the concourses at the Airport operate approximately twenty (20) hours per day, and were not in operation during the hours of Plaintiff's commute to her 4:00 a.m. shift.

22.

On information and belief, the distance between concourses at the Airport is approximately 1,000 feet. A map of the concourses is attached hereto as Exhibit B.

**COUNT ONE: DEFENDANTS' WILLFUL FAILURE TO PAY OVERTIME AS REQUIRED BY THE FLSA**

23.

Plaintiff worked in excess of fifty (50) hours per week as a result of the requirements of her employment, such as hours worked prior to her 4:00 a.m. shift.

24.

Plaintiff would routinely take MARTA to the Airport prior to her 4:00 a.m. shift.

25.

Once she arrived at the Airport via MARTA, Plaintiff would walk from the Ground Transportation Center[2] to the same security checkpoints used by air travelers.

26.

Prior to her shift, Plaintiff was required to walk from the security checkpoints to Concourse D of the Airport to retrieve a cart that was used for transporting bags of money ("banks") retained by the restaurants operated by Defendants. This walk was required because the Plane Trains were not operational at the time of Plaintiff's travel to Concourse D.

27.

While at Concourse D, she would also do preparatory work at the restaurants she was required to open, including starting ovens and other equipment.

28.

After her work at Concourse D, Plaintiff would push the cart back to Concourse C. At Concourse C, she would proceed to the "cash room," which was located in a separate building from the concourse.

---

[2] The Ground Transportation Center's location in relation to the concourses may be found at the bottom of the map provided in Exhibit B.

29.

At the cash room, she would clock in and load the banks onto the cart for the restaurants she was required to open.

30.

During Plaintiff's employment, Defendants' policies required that Plaintiff perform work during hours prior her shift and that she walk in excess of a mile to get to the location where she could clock in, which also included time spent transporting Defendants' equipment. Such work was an integral and indispensible part of Plaintiff's principal activities, and is expressly compensable pursuant to 29 C.F.R. § 785.38, which provides "Where an employee is required … to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." *Id*.

31.

Defendants had notice that, by paying her for half of her MARTA transit costs only, Plaintiff incurred a longer, more time consuming commute than those employees who were granted parking benefits.

32.

Defendants had notice of Plaintiff's work activities prior to her shift because Plaintiff discussed her commute and her work with Defendants, including members of Defendants' Loss Prevention department.

33.

Defendants did not allow Plaintiff to clock in for the time she spent working prior to her shift beyond a period of fifteen (15) minutes.

34.

Defendants permitted Plaintiff to work, and received the benefit of her work, without paying Plaintiff for time worked in excess of forty (40) hours per week at a rate of not less than one and one-half times her regular hourly rate.

35.

Defendants willfully violated the FLSA by refusing to pay Plaintiff overtime wages for certain hours worked.

36.

Pursuant to 29 U.S.C. §§ 216(b) and 255(a), Plaintiff seeks damages in an amount of the her unpaid overtime wages, liquidated damages as provided under the FLSA, interest, and any such other legal and equitable relief as the Court deems proper.

37.

Plaintiff seeks recovery of attorney fees and costs to be paid by Defendants as provided by the FLSA.

**COUNT TWO: DEFENDANTS' WILLFUL FAILURE TO PAY PLAINTIFF STRAIGHT TIME FOR HOURS WORKED AS REQUIRED BY THE FLSA**

38.

Plaintiff attended training sessions for her position on September 27, 2011, and October 3, 2011, but she was not paid wages for her time.

39.

Plaintiff attended a mandatory fingerprinting procedure that required several hours of Plaintiff's time, but she was not paid wages for her time.

40.

On information and belief, Plaintiff was not paid for some or all of the time she worked during her last week of employment.

41.

On information and belief, Defendants withheld money from Plaintiff's paychecks to pay for benefits for which Plaintiff was not enrolled.

42.

Defendants did not pay the Plaintiff wages for all hours worked during certain workweeks, including hours worked off-the-clock and hours worked on-the-clock.

43.

Defendants, pursuant to their policies and practices, willfully refused and willfully failed to pay Plaintiff straight time as required by the FLSA.

**COUNT 3: DEFENDANTS' WILLFUL FAILURE TO PAY PLAINTFF THE MINIMUM WAGE AS REQUIRED BY THE FLSA**

44.

As described in Paragraphs 35 - 37 of this Complaint, Plaintiff was not paid for certain compensable hours, including training sessions and time spent on specific job requirements.

45.

As a result of Defendants' failure to pay wages for the hours described in Paragraphs 35 - 37, Plaintiff's regular rate for certain workweeks fell below the minimum wage.

46.

Defendants willfully violated the FLSA by refusing to pay Plaintiff the minimum wage for certain hours worked.

47.

Pursuant to 29 U.S.C. §§ 216(b) and 255(a), Plaintiff seeks damages in an amount of the her unpaid overtime wages, liquidated damages as provided under the FLSA, interest, and any such other legal and equitable relief as the Court deems proper.

48.

Plaintiff seeks recovery of attorney fees and costs to be paid by Defendants as provided by the FLSA.

**PRAYER FOR RELIEF**

Based on the allegations set forth in this Complaint and the evidence as it is developed in this case, Plaintiff respectfully prays that:

a. the Court enter judgment against Defendants for unpaid wages dating back to three years from the date that this action is filed, or, in the alternative, for unpaid wages dating back two years from the date this action is filed;

b. the Court award Plaintiff unpaid wages in a sum that shall be proven at trial;

c. the Court award Plaintiff liquidated damages equal to the amount of unpaid wages;

d. the Court award Plaintiff all costs and attorney fees incurred in prosecuting these claims in a sum that shall be proven at trial; and

e. the Court grant Plaintiff any such other legal and equitable relief as the Court deems proper.

This 8th day of February, 2012.

| | |
|---|---|
| | s/ John L. Mays |
| **MAYS & KERR LLC** | John L. Mays |
| 229 Peachtree Street NE | Ga. Bar No. 986574 |
| International Tower \| Suite 980 | john@maysandkerr.com |
| Atlanta, Georgia 30303 | |
| Telephone:   404 410 7998 | Jeff Kerr |
| Facsimile:   404 855 4066 | Ga. Bar No. 634260 |
| Attorneys for Plaintiff | jeff@maysandkerr.com |